UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


UNITED PRESCRIPTION SERVICES, INC.,

              Plaintiff,


v.                                                      CASE NO.: 8:07-CV-316-T-30MAP

ALBERTO R. GONZALEZ, in his official
capacity as Attorney General, United States
Department of Justice, and KAREN TARDY,
in her official capacity as the Administrator
of the United States Drug Enforcement
Administration,

              Defendants.
_____/

## REPORT AND RECOMMENDATION

       United Prescription Services, Inc. ("UPSI"), a pharmacy whose business primarily

involves distributing controlled substances via mail order, claims the Drug Enforcement

Administration ("DEA") violated its due process rights when it immediately suspended

UPSI's registration to dispense controlled substances.  Accordingly, it moves this Court to

enjoin DEA from enforcing the Immediate Suspension of Registration.  After a hearing on the

matter, I recommend the motion be denied because UPSI has failed to demonstrate that DEA's

decision is either arbitrary or capricious.[1]

    *A. Factual background*

       UPSI is a pharmacy registered with DEA to dispense controlled substances in Schedules

---

[1] United States District Judge James S. Moody Jr. referred this matter to me for
issuance of a Report and Recommendation pursuant to 28 U.S.C. § 636.

II-IV of the Controlled Substance Act (CSA).  On February 13, 2007, DEA issued an order

immediately suspending UPSI's registration based on the belief that UPSI's continued

registration constituted an imminent danger to the public health and safety (doc. 2-2).  In

response, UPSI filed this action seeking to enjoin DEA from enforcing the order.[2]

*B.  Discussion*

A district court may issue a preliminary injunction if the plaintiff shows: (1) it has a

substantial likelihood of succeeding on the merits of the underlying case; (2) irreparable injury

during the pendency of the suit will be suffered unless the injunction issues immediately; (3)

the threatened injury to the plaintiff outweighs whatever damage the proposed injunction may

cause the defendant; and (4) if issued, the injunction would not be adverse to the public

interest.  *Alabama v. U.S. Army Corps of Engineers,* 424 F.3d 1117, 1128 (11th Cir. 2005).  But

at the outset, the plaintiff must rest its demand for such an extraordinary remedy upon a viable

cause of action.  Namely, "[f]or a traditional injunction to be even theoretically available, a

plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R.

Civ. P. 12(b)(6) (failure to state a claim)."  *Id.* at 1127 (quoting *Klay v. United Healthgroup*,

*Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004)).  The "remedy is potentially available only after a

plaintiff can make a showing that some independent legal right is being infringed – if the

plaintiff's rights have not been violated, [it] is not entitled to any relief, injunctive or

otherwise."  *Id.*  And even if the plaintiff shows a violation of a cognizable right, the remedy is

only appropriate if there is no adequate legal remedy for that wrong and an irreparable injury

---

[2] A detailed rendition of the facts and circumstances leading to the present litigation can be found in the Court's Report and Recommendation issued in *United Prescription Services, Inc. v. Gonzalez, et., al.*, 2006 WL 3804728 (M.D. Fla. Dec. 22, 2006).

will result if the injunction does not issue.  *Id.*

The Administrative Procedure Act ("APA") allows a court to set aside agency action

that is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

with the law."  5 U.S.C. § 706(2)(a).  In reviewing agency action in cases such as this, district

courts apply the arbitrary and capricious standard.  *See North Buckhead Civic Ass'n v. Skinner*,

903 F.2d 1533, 1538-39 (11th Cir. 1990).  To determine whether an agency decision is

arbitrary and capricious, the court "must consider whether the decision was based on a

consideration of the relevant factors and whether there has been a clear error of judgment."  *Id*

at 1538 (citing *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, 378 (1989).  This inquiry

must be "searching and careful," but "the ultimate standard of review is a narrow one."  *Id.*

This restrictive standard gives the court very little latitude in finding grounds for reversal;

"[a]dministrative decisions should be set aside in this context ... only for substantial procedural

or substantive reasons as mandated by statute, ... not simply because the court is unhappy with

the result reached."  *Id*. The reviewing court is not authorized to substitute its judgment for that

of the agency concerning the wisdom or prudence of the proposed action.  *Id*. (citing *Druid

Hills Civic Ass'n v. Federal Highway Admin.*, 772 F.2d 700, 709 (11th Cir. 1985).  Instead, the

court must determine whether there is a rational connection between the underlying facts and

the choice the agency made.  *See Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156,

168 (1962).

The Controlled Substance Act ("CSA") and its implementing regulations establish

controls on the import, export, manufacture, and distribution of controlled substances.  *See* 21

U.S.C. § 801 *et seq.*; 21 U.S.C. § 951 *et seq*; 21 C.F.R. § 1300 *et seq*.  Under the CSA, anyone

who distributes a controlled substance must obtain a registration from DEA on an annual basis.

21 U.S.C. § 822(a).  Once registered, DEA has the authority to revoke such registration if,

*inter alia*, the registrant commits such acts as to render the registration inconsistent with the

public interest.  *See* 21 U.S.C. § 824(a)(4).  In making that determination, the DEA must

consider: (1) the maintenance of effective controls against diversion of particular controlled

substances into other than legitimate medical, scientific, and industrial channels; (2)

compliance with applicable State and local law; (3) prior conviction record of applicant under

Federal or State law relating to manufacture, distribution, or dispensing of such substances; (4)

past experience in the distribution of controlled substances; and (5) such other factors as may

be relevant to and consistent with the public health and safety.  *See* 21 U.S.C. § 823(e).

Before revoking a registration, DEA must serve upon the registrant an order to show

cause containing a statement of the basis for the agency's action and provide the registrant

with the opportunity to request a hearing.  *See* 21 U.S.C. § 824(c).  DEA can, in its discretion,

suspend any registration simultaneously with the institution of proceedings under Section 824

where it finds that there is an imminent danger to the public health or safety.  *See* 21 U.S.C. §

824(d).  To do so, DEA must serve an order of immediate suspension which contains a

statement of its findings regarding the danger to the public health and safety.  *See* 21 C.F.R. §

1301.36(e).  In the event of an immediate suspension, the registrant is entitled to an expedited

administrative hearing.[3]  *See* 21 C.F.R. § 1301.36(h).  An immediate suspension remains in

force until the conclusion of the administrative proceedings unless withdrawn by DEA or

---

[3] In this case, the hearing was set for April 9, 2007 in Washington, D.C..  Although the statute authorizes a registrant to request an expedited hearing, UPSI failed to request an earlier hearing.

dissolved by a court of competent jurisdiction.  *See* 21 U.S.C. § 824(d).

        1.      *likelihood of success on the merits*

        In the instant case, DEA's immediate suspension of UPSI's registration was based on

the belief that UPSI was responsible for the diversion of large quantities of controlled

substances (doc. 2-2).  As such, DEA believed that UPSI's continued registration would

constitute an imminent danger to the public health and safety because of the substantial

likelihood that UPSI would continue to divert controlled substance during the pendency of the

administrative proceedings. (doc. 2-2).  In support of that finding, DEA's order listed multiple

allegations that include: (1) UPSI distributed large quantities of hydrocodone based on

prescriptions written other for a legitimate medical purpose or written by a practitioner outside

the usual course of professional practice; (2) UPSI solicited customers via the Internet; (3)

UPSI filled a large number of prescriptions by one physician; (4) the Kentucky Bureau of

Investigation seized shipments from UPSI for failure to report to Kentucky's prescription

monitoring system; (5) UPSI shipped controlled substances to Kentucky using shipping labels

from a "Makes and Models Magazine"; (6) dispensed controlled substances based on

prescriptions written by a doctor with an expired DEA registration; (7) shipped controlled

substances to a number of states in which the dispensing violated state law; (8) UPSI

dispensed controlled substances based on prescriptions that either had no address or an

incorrect address for the patient; and (9) engaged in manufacturing without the proper DEA

registration (doc. 2-2).[4]

---

[4] The numbers in the list do not correspond with the enumerated paragraphs in the
immediate suspension order.

UPSI, believing that DEA's allegations that it poses and imminent danger to the public health and safety is in clear error, moves this Court to issue an injunction preventing DEA from enforcing the Immediate Suspension of Registration until after the conclusion of the administrative hearing scheduled for April 9, 2007 (doc. 2).  Specifically, UPSI alleges: (1) the immediate suspension is based on "erroneous factual assertions, misconstrued technical non-compliance issues, and a fundamentally flawed (although carefully unstated) veiled assertion that prescriptions issued by telemedicine practitioners are not valid unless the practitioner personally conducted a physical examination of the patient (in contrast to relying on the physical examination of another practitioner)"; (2) the imminence of the danger ignores the fact that DEA had knowledge of the violations for over a year; (3) and the imminence of threat ignores changes that UPSI has made to its policies and procedures in response to DEA's criticism (doc. 2).  UPSI also claims that since DEA's Immediate Suspension of Registration was erroneously issued, DEA's seizure of its property violated its Fifth Amendment rights (doc. 2).

The arguments in UPSI's motion can be divided into two categories, factual and temporal.  The factual arguments, essentially the same arguments counsel made in the previous case, *United Prescription Services, Inc. v. Gonzalez, et., al.*, 8:06-CV-1977-T-30MAP, along with alleged violations of the court's temporary restraining order, will be addressed fully at the scheduled administrative hearing.  Those arguments, which dispute the truth and legitimacy of DEA's findings, attempt to weaken the basis for DEA's determination that UPSI posed an imminent threat to the public health and safety.  Although the infractions, taken individually, may not constitute an imminent threat; taken as a whole, they demonstrate a pattern and practice

of conduct which DEA could reasonably conclude was inconsistent with public health and safety. *See* 21 U.S.C. § 823(e). Taken as true, they show that UPSI: (1) failed to maintain effective controls against diversion; (2) did not comply with applicable State and local law; and (3) demonstrated a propensity for dispensing a large quantity of controlled substances. These facts may establish a reasonable basis for suspending UPSI's registration under 21 U.S.C. § 824(a)(4), but the CSA requires a showing of imminent harm before DEA can issue an immediate suspension per 21 U.S.C. § 824(d).

In that regard, one of the allegations in DEA's suspension order strikes the Court as evidencing an imminent harm. Specifically, paragraph seven (7) of the Immediate Suspension of Registration alleges that during a 16 month period (Sept. 2005 to Dec. 2006), UPSI ordered more than 5,137,940 dosage units of hydrocodone and dispensed millions of dosage units of controlled substances throughout the United States based on prescriptions it knew or should have known were not issued in the usual course of professional practice or for a legitimate medical purpose (doc. 2-2). These numbers, when combined with DEA's questions as to the validity of the underlying prescriptions, lead to the reasonable conclusion that UPSI may have been involved in the diversion of controlled substances. Although this activity may not reflect current dosage units, due to the loss of suppliers and UPSI's decision to no longer fill prescriptions from Dr. Reppy, it does establish a course of conduct that, even if allowed to continue at a lower volume, constitutes an imminent harm to the public health and safety (i.e. the danger to substance abusers and the public as a whole if UPSI were allowed to continue dispensing/diverting large quantities of controlled substances during the pendency of the administrative hearing).

UPSI argues that there is no imminent danger in its continued registration, as DEA

knew of the alleged violations for over a year and has ignored the significant changes made to

its policies and procedures in response to DEA criticisms (doc. 2).[5]  At the injunction hearing,

UPSI analogized its situation to that in a case where a court enjoined DEA from enforcing a

suspension order.  *See Norman Bridge Drug Co. v. Banner*, 529 F.2d 822 (5th Cir. 1976).

UPSI's counsel argued that, as in *Norman Bridge*, the delay in DEA's issuance of the

suspension order precludes a determination of imminent danger.  In that case, DEA's

suspension order was based on record keeping violations and the company president's guilty

plea, seven months earlier, for dispensing a controlled substance.  *Id*. at 823.  The district court

enjoined DEA from enforcing the suspension, finding that in light of the delay, there had been

no showing of imminent danger to the public.  *Id.* at 826.

The *Norman Bridge* case, however, is distinguishable from the present case.  Unlike

*Norman Bridge*, DEA's delay in issuing the immediate suspension is justified by DEA's

ongoing negotiations with UPSI's counsel.  Since DEA executed an administrative search

warrant on February 6, 2006, UPSI's counsel has been actively working with DEA to avoid

losing its registration.  As a result of those negotiations, DEA chose not to pursue formal

---

[5]  It should be noted that all of the violations cited in the immediate suspension order
are not that remote in time.  The order includes allegations that UPSI ordered and dispensed an
abnormally high volume of controlled substances in 2006 and shipped controlled substances
into Kentucky in violation of Kentucky as late as January of 2007 (doc. 2-2).  The earlier
"violations serve as a background to the events which ultimately culminated in the suspension
of the registration." *Easy Returns Worldwide, Inc. v. United States*, 266 F. Supp. 2d 1014, 1021
(E.D.Mo. 2003).

administrative action for almost a year.[6]  Hence, DEA's delay has not been without reason.

The continuous negotiations between the parties reasonably explains the year-long delay.  It

would be unreasonable for this Court to allow UPSI to stave off the suspension of its

registration, via negotiations with the DEA, and then attack DEA's subsequent actions on the

basis of delay.   This is especially true in light of the fact that UPSI claimed in its earlier

challenge that DEA was violating its due process rights by informally doing what it could not do

administratively (revoke its registration via a show cause order).  It would seem now that UPSI

has gotten the relief it originally requested, i.e. due process and the chance to fully litigate its

administrative claims.

Given the restrictiveness of the arbitrary and capricious standard, this Court is not

authorized to substitute its judgment for that of the agency concerning the prudence of the

proposed action.  *North Buckhead Civic Ass'n*, 903 F.2d at 1538. Instead, the Court must

determine whether there is a rational connection between the underlying facts and the choice

the agency made. *See Burlington Truck Lines,* 371 U.S. at 168.  Although some of the bases

for DEA's decision are tenuous and may ultimately prove to be inadequate at the

administrative hearing; taken as a whole, they demonstrate a pattern and practice of conduct

which DEA could reasonably conclude was inconsistent with public health and safety.  Because

DEA has provided a rational connection between the facts and the conclusion that UPSI's

continued registration would constitute imminent danger to the public, the Court must show

deference to the agency.  *Id*.  As such, UPSI is unable to show the likelihood of success on the

---

[6] DEA was prepared to issue a show cause order as early as September 20, 2006, but waited until February 13, 2007 (the date of the immediate suspension).

merits.

2.      *other preliminary injunction factors*

Even if UPSI could a show the likelihood of success on the merits, it has failed to demonstrate that it meets the remaining requirements for injunctive relief.  For example, UPSI has failed to show that it will be irreparably harmed and unable to be compensated by monetary damages.  Although UPSI will be unable able to fill prescriptions for controlled substances, its customers, assuming they have a valid prescription, should be able to obtain their medication from ordinary brick-and-mortar pharmacies.  UPSI also claim that the loss of goodwill will irreparably harm its reputation; however, the Court believes that any harm to UPSI's reputation as a dependable pharmacy can be rectified with monetary damages.  *See Medipharm-Rx, Inc. v. Gonzales*, 2006 WL 3842205, * 2 (M.D. Fla. 2006).   As such, "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Samson v. Murray*, 415 U.S. 61, 90 (1974).

The last two factors, the balance of the hardships and the public interest, also weigh in favor of DEA.   DEA oversees a highly regulated industry and is charged with acting in the interest of public safety.  UPSI's main interest, on the other hand, is to continue its profitable operation during the pendency of the administrative hearing.  When these government and private interests collide in highly regulated industries, prudence requires that "private litigants … give way to the reasonable attainment of public purposes."  *Wedgewood Village Pharmacy, Inc. v. Ashcroft,* 293 F. Supp. 2d 462, 475 (D.N.J. 2003).

C.  *Conclusion*

For the reasons discussed above, I recommend the motion for preliminary injunction be

DENIED.

_Mark a. Pizzo_
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date it is served on the parties shall bar an aggrieved party from a de novo determination by the District Court of issues covered in the report, and shall bar the party from attaching on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982)(*en banc*).

cc:     Hon. James S. Moody, Jr.
        Plaintiff
        Defense Counsel